# EXHIBIT E

DA0162

# Morgan Lewis

**C. Erik Hawes**
Partner
+1.713.890.5165
erik.hawes@morganlewis.com

December 21, 2020

Via Federal Express

Lisa J. Moyles, Esq.
Moyles IP, LLC
One Enterprise Drive, Suite 428
Shelton, CT  06484

Re:   DynaEnergetics/SWM International, Inc.

Ms. Moyles:

I am writing on behalf of my client SWM International, Inc. ("SWM") to follow up on recent communications you have had with SWM on behalf of your client DynaEnergetics Europe GmbH ("Dyna").  In particular, as you know, you sent a letter to SWM on September 11, 2020 concerning a Dyna patent application that would potentially be infringed by the Thunder Disposable Gun System ("the Thunder Gun"), and counsel for SWM responded on September 25, informing you that SWM would cease making or selling the Thunder Gun once it received notice that the application in question had become an issued patent.  As it is our understanding that Dyna's application was recently issued as US Patent No. 10,844,697 ("the '697 patent"), SWM felt it was appropriate to let you know that it has begun phasing out the production of its Thunder Gun line of products and intends to continue doing so, consistent with the letter from its prior counsel.  Accordingly, we assume that the concerns raised in your letter of September 11 have now been resolved.

Furthermore, since receiving your initial letter, SWM has investigated the validity of the claims included in the '697 patent.  When the examiner decided to allow these claims, his *only* stated reason for doing so was the belief that the primary prior art reference upon which he was focused – US Patent No. 9,145,764 ("Burton") – "does not teach or suggest placement of detonator 250 within gun carrier 220."  However, as you presumably recognized at the time in your role as prosecution counsel, the examiner's identification of element 220 in Burton as the claimed "outer gun carrier" was plainly a mistake.

Burton discloses a perforating string with multiple "gun assemblies."  In Figure 1, these assemblies are referenced as 110a and 110b (see Burton at 5:35-37) while, in Figure 2, they are identified as "main sub body 210" and "lower gun assembly 220" (*id*. at 7:4-16).  Between the two exemplary gun assemblies in Figure 2 is "middle section 230," which obviously corresponds to the tandem seal adapter housing the pressure bulkhead in the claims of the '697 patent.  And coupled to the upper end of middle section 230 (i.e., the tandem seal adapter) is the lower end of main sub body 210.  Consistent with the language of '697 claim 1, this relationship confirms that "main sub body 210" comprises a portion of the outer gun carrier.  Thus, the relevant question for the examiner to answer

**Morgan, Lewis & Bockius LLP**

1000 Louisiana Street
Suite 4000
Houston, TX  77002             T +1.713.890.5000
United States                   F +1.713.890.5001

DB1/ 117832075.1

**DA0163**

Lisa J. Moyles, Esq.
December 21, 2020
Page 2

should have been whether detonator 250 is housed within main sub body 210 – as it clearly is (see Burton at Fig. 2, 7:26-28) – rather than within lower gun assembly 220. Put simply, the examiner was demonstrably confused about the fact that Figure 2 of Burton discloses portions of two separate gun assemblies – and thus two separate outer gun carriers – joined together by middle section 230. Because the uphole gun carrier, including main sub body 210, clearly does house detonator 250, the claims of the '697 patent are invalid and should never have issued.

Moreover, the basic design Dyna apparently believes to be covered by the '697 patent – a perforating gun with a detonator located in the gun carrier and a tandem sub with a pressure bulkhead – was already ubiquitous in this industry as of the earliest claimed priority date of the '697 patent. As just one example, US 2016/0084048 ("Harrigan") – with a priority date two months earlier than the '790 application – discloses a perforating gun with carrier 110 housing initiator assembly module 125, which includes detonator 301. See ¶¶ 22-23. Thus, Harrigan clearly discloses the one point that the examiner of the '697 patent believed (mistakenly) to distinguish the pending claims from the prior art. Furthermore, Harrigan discloses that "carrier 110 and loading tube 115 may be sealed off at either end by bulkheads 117, 118." *Id*. at ¶ 24. Within bulkheads 117, 118 are "modular feedthru[s] 119, 120" which use connector 530 comprising a "central electrical pin" to "support continuous communicative connection through the gun." *Id*. at ¶¶ 24-25, 31, 44. Such continuous communication throughout the gun necessarily includes an electrical connection with the detonator. Using the terms of the '697 patent, bulkheads 117, 118 plainly satisfy the requirement of a tandem seal adapter and modular feedthrus 119, 120 include all required elements of the claimed pressure bulkhead. Finally, although Harrigan claims priority to a provisional filing, that earlier application expressly discloses all of the same key features, including an initiator module, which is located within the loading tube (Fig. 2) and houses the detonator (Fig. 4), and a pressure bulkhead with a feedthru that includes an electrical contact pin ("Fig. 5: Bulkhead End" and "Fig. 5: Feedthru"). Accordingly, pursuant to 35 USC § 102(d)(2), there should be little question that Harrigan is indeed entitled to the filing date of the provisional application which describes the same subject matter.

In addition to Harrigan and Burton, other prior art references and devices, including but not limited to the SafeJet system commercially introduced by Schlumberger in at least 2012, also anticipate most or all of the claims in the '697 patent. For all these reasons, the patent in question is plainly invalid and subject to being declared so by the Patent Trial & Appeal Board.

I trust that this information will resolve your concerns but, in the event that DynaEnergetics feels the need to communicate further with SWM, please direct any such inquiries to my attention.

Sincerely,

C. Erik Hawes