**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br>        Plaintiffs, <br><br>   v. <br><br> SWM INTERNATIONAL, LLC, <br><br>     Defendant. | Civil Action No: 3:21-cv-00192-M |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY**
**<u>PENDING ENTRY OF FINAL JUDGMENT</u>**

i

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     FACTS .....................................................................................................................1

        A.      Development and Ownership of the '697 Patent .......................................1

        B.      Procedural History of this Action ............................................................3

        C.      SWM's Colorado Action and Motion to Stay............................................5

III.    ARGUMENT ...........................................................................................................6

        A.      DynaEnergetics Would Suffer Both Prejudice and Improper Tactical
                Disadvantage from a Stay. .......................................................................7

        B.      A Stay Will Not Simplify Issues in This Case...........................................11

                1.      SWM's Claims of Simplification Are Mere Speculation .........12

                2.      SWM's Colorado Action Claims Fail on their Face..................13

                3.      The Law Does Not Countenance Stays Pending Ownership
                        Challenges Under Normal Circumstances. ................................16

        C.      The Stage of this Case Militates Against a Stay. ....................................17

        D.      A Stay Would Not Reduce the Burdens on the Parties or the Court. ...................18

IV.     CONCLUSION........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Other Authorities**

*Akishev v. Kapustin*,
   23 F. Supp. 3d 440 (D.N.J. 2014) ..................................................................... 8

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012)............................................................................ 9

*Chouinard v. Chouinard*,
   568 F.2d 430 (5th Cir. 1978) ........................................................................... 17

*Colorado Plasterers' Pension Fund v. Plasterers' Unlimited, Inc.*,
   655 F. Supp. 1184 (D. Colo. 1987)................................................................... 17

*Diamondback Indus., Inc. v. Repeat Precision, LLC*,
   No. 6:19-CV-00034-ADA, 2019 WL 8501017 (W.D. Tex. Sept. 11, 2019) .................. 14

*EON Corp. v. Sensus USA Inc.*,
   No. 6:09-CV-116, 2009 WL 10685336 (E.D. Tex. Dec. 18, 2009) ................................ 13

*Fairfield Indus. Inc. v. Seabed Geosolutions (US) Inc.*,
   No. CV H-17-1458, 2018 WL 6594013 (S.D. Tex. July 3, 2018)............................... 6, 13

*In re Amerijet Int'l, Inc.*,
   785 F.3d 967 (5th Cir. 2015) ........................................................................... 10

*Jefferson St. Holdings Intell. Prop. LLC v. Tech 21 UK Ltd.*,
   No. 5:18-CV-806-DAE, 2019 WL 5795667 (W.D. Tex. June 10, 2019)........................ 13

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)....................................................................................... 6, 10

*Leath v. Humble Oil & Ref. Co.*,
   223 S.W. 1022 (Tex. Civ. App. 1920) .............................................................. 15

*Lucht's Concrete Pumping, Inc. v. Horner*,
   255 P.3d 1058 (Colo. 2011)............................................................................. 15

*Mayberry v. Pennsylvania*,
   400 U.S. 455 (1971)........................................................................................... 9

*Murata Mach. USA v. Daifuku Co.*,
   830 F.3d 1357 (Fed. Cir. 2016)........................................................................ 7, 20

*Nokia Corp. v. Apple Inc.*,
   No. C.A. 09-791-GMS, 2011 WL 2160904 (D. Del. June 1, 2011)............................ 7, 20

*Nussbaum v. Diversified Consultants, Inc.*,
　　No. CIV. 15-600, 2015 WL 5707147 (D.N.J. Sept. 28, 2015) .......................................... 8

*Optimal Golf Sols., Inc. v. Altex Corp.*,
　　No. 3:09-CV-1403-K, 2009 WL 10733424 (N.D. Tex. Sept. 30, 2009) ......................... 19

*Performance Aftermarket Parts Grp., Ltd. v. TI Grp. Auto. Sys., Inc.*,
　　No. CIV.A. H-05-4251, 2006 WL 2850061 (S.D. Tex. Oct. 3, 2006) .............................. 8

*Propat Int'l Corp. v. Rpost, Inc.*,
　　473 F.3d 1187 (Fed. Cir. 2007).................................................................... 18, 19

*RMail Ltd. v. Amazon.com, Inc.*,
　　No. 2:10-CV-258, 2014 WL 11394910 (E.D. Tex. Jan. 30, 2014)...................... 11, 12, 19

*RPost Holdings, Inc. v. Exacttarget, Inc.*,
　　No. 2:12-CV-512-MHS-RSP, 2014 WL 12703780 (E.D. Tex. Sept. 29, 2014) .............. 19

*Safeway Transit LLC v. Disc. Party Bus, Inc.*,
　　954 F.3d 1171 (8th Cir. 2020) ......................................................................... 12

*Samson Lone Star Ltd. P'ship v. Hooks*,
　　497 S.W.3d 1 (Tex. App. 2016)......................................................................... 17

*Textile Prods., Inc. v. Mead Corp.*,
　　134 F.3d 1481 (Fed. Cir. 1998)......................................................................... 15

*Waterman v. Mackenzie*,
　　138 U.S. 252 (1891)......................................................................................... 15

*Wireless Protocol Innovations, Inc. v. TCT Mobile (US) Inc.*,
　　No. 6:15-CV-918-JRG-KNM, 2017 WL 11630762 (E.D. Tex. Feb. 9, 2017).................. 8

*Xerox Corp. v. 3Com Corp.*,
　　69 F. Supp. 2d 404 (W.D.N.Y. 1999) ...................................................... 7, 8, 20

**Statutes**

28 U.S.C. § 1404............................................................................................ 9

35 U.S.C. § 154............................................................................................ 4

35 U.S.C. § 262.................................................................................. 6, 8, 12

35 U.S.C. § 284............................................................................................ 4

**Rules**

Fed. R. Civ. P. 9.......................................................................................... 14

Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc. (collectively, "DynaEnergetics") hereby oppose the Motion to Stay Pending Entry of Final Judgment filed by Defendant SWM International, LLC ("SWM").  Dkt. 61.

## I.     INTRODUCTION

SWM has no shame. It has concocted a baseless lawsuit by paying a named inventor of the patent-in-suit $350,000 to say he was defrauded.   SWM knows that it is infringing DynaEnergetics' patent and may soon be enjoined from selling its infringing guns, so its litigation strategy has become to throw up every roadblock it can—regardless of merit—in order to avoid its day of reckoning. SWM has publicly accused, by name, the leaders and lawyers of DynaEnergetics of fraud and other improper conduct, yet SWM makes no attempt to support these allegations in its Motion. Instead, SWM filed its complaint in Colorado,[1] but demands this Court stay DynaEnergetics' infringement suit simply because "Dyna's right to bring suit has been called into question." Dkt. 61 at 3.  But the simple assertion of a potential defense cannot justify staying a claim, whether in the same case or parallel cases.  SWM's approach flies in the face of the basic structure of litigation in federal courts whereby claims and defenses normally proceed concurrently.  SWM provides no compelling reason to depart from this basic, typical procedure. Its arguments are simply frivolous efforts to delay this lawsuit and thus extend its unfettered infringement.  SWM's motion should be denied.

## II.    FACTS

### A.     Development and Ownership of the '697 Patent

DynaEnergetics is a leader in the field of well completion, perforating, well abandonment, and seismic technologies.   DynaEnergetics has a long history of technological innovation,

---

[1] *SWM Int'l, LLC v. DynaEnergetics Europe GbmH*, 21-cv-2315 (D. Colo.) (hereinafter the "Colorado Action").

especially in the manufacture of detonators, detonating cords, and perforating hardware. Importantly for this case, DynaEnergetics has developed groundbreaking inventions for a wireless detonator assembly, a pre-wired perforating gun assembly, and methods of assembling the pre-wired perforating gun assembly. These inventions are currently protected by multiple United States patents, including the asserted U.S. Patent No. 10,844,697 (the "'697 Patent"), which issued on November 24, 2020, from U.S. Patent Application No. 16/585,790 (the "'790 Application"). The '790 Application was published on January 30, 2020 as U.S. Pre-Grant Publication No. 2020/0032626. The '697 Patent lists as named inventors Frank Preiss, Liam McNelis, Eric Mulhern, Thilo Scharf, and David Parks.[2]

The development of the '697 Patent dates to a time period when DynaEnergetics hired JDP Engineering & Machine Inc. ("JDP"), a small Canadian engineering consulting company owned by the same David Parks that would later be listed as an inventor on the '697 Patent.[3] An "Engineering Agreement" ("the 2012 Agreement") between DynaEnergetics and JDP dated April 19, 2012 governed the parties' collaboration to develop a "low budget economic perforating system (LBEPS)," and contractually provided DynaEnergetics "exclusive rights to the LBEPS." Dkt. 62 at DA0028. JDP further provided an exclusive license to DynaEnergetics for its interest in any patented invention developed during the term of the 2012 Agreement. Dkt. 62 at DA0031. David Parks signed the agreement on behalf of JDP, while Frank Preiss signed on behalf of DynaEnergetics. *Id*. at DA0032.

---

[2] DynaEnergetics has further submitted a Petition to the USPTO to add DynaEnergetics employee, Christian Eitschberger, as a named inventor of the '697 Patent.
[3] It is DynaEnergetics' understanding that JDP was either a sole-proprietorship or had a single employee in addition to Mr. Parks.

All of the named inventors other than Parks assigned their interests in the '790 Application directly to DynaEnergetics or one of its corporate affiliates.  A004-06;[4] A008-17.  Parks assigned his interest in the '790 Application to JDP on October 21, 2016, and the assignment was recorded with the U.S. Patent & Trademark Office ("USPTO") on September 27, 2019.  A015-017.  In November 2019, Parks and JDP began working as an engineering consultant to SWM to improve its own perforating system products. SA1011[5] at 21:16-22:13.

On April 23, 2020—months after JDP and Parks began consulting with SWM—JDP assigned its interest in the '790 Application to DynaEnergetics (the "2020 Assignment"), which assignment was recorded with the USPTO on April 27, 2020.  Dkt. 62 at DA0020. This assignment to DynaEnergetics explicitly included assignment of various intellectual property rights, including any rights to the '790 Application, and clearly states it was made for "consideration of the sum of One United States Dollar ($1.00 USD) and other good and valuable consideration."  *Id*.

### B.    Procedural History of this Action

Now holding all rights in the '790 Application, on September 11, 2020, DynaEnergetics sent a letter to the president of SWM, Dawna Mauldin, asserting that SWM infringed various patents and would infringe the soon-to-be issued patent that became the '697 Patent.  Dkt. 1 ¶ 23. On November 25, 2020, DynaEnergetics sent another written notice informing SWM of the issuance of the '697 Patent and again notifying SWM of its infringement. SWM responded by agreeing to cease some of its infringing activities in correspondence dated September 25, 2020 and December 21, 2020. However, SWM later reneged on this promise, refusing to sign any agreement stating that it would cease all infringing activity.

---

[4] References to A### herein refer to DynaEnergetics' public appendix, filed contemporaneously herewith.
[5] References to SA### herein refer to DynaEnergetics' sealed appendix filed contemporaneously with DynaEnergetics' reply brief in support of its motion for a preliminary injunction, Dkt. 65-2.

DynaEnergetics sued SWM for patent infringement on January 28, 2021.  DynaEnergetics'
complaint alleges that it is "the owner of the '697 Patent" and that SWM infringes the '697 Patent
by manufacturing, offering for sale, and selling various products including the Thunder Gun,
PerfAlign, and PerfStorm products.  *Id.* ¶¶ 7, 26.  DynaEnergetics seeks relief for patent
infringement under 35 U.S.C. § 284 and for the violation of its provisional rights under 35 U.S.C.
§ 154(d).  *Id.* ¶ 30.  SWM requested, and DynaEnergetics agreed to, two extensions to the deadline
to respond to the complaint in hopes that the dispute could be resolved.  Dkt. 8; Dkt. 14.  On March
31, 2021, SWM moved to dismiss all claims regarding products other than the Thunder Gun (*i.e.*
the accused PerfAlign and PerfStorm products), and has not yet answered DynaEnergetics'
complaint.  Dkt. 21; *see also* Dkt. 27; Dkt. 29.

Nevertheless, this case has continued to proceed quickly.  On April 15, 2021, the Court
ordered the parties to meet for a scheduling conference by April 29, 2021.  Dkt. 24.  On May 6,
2021, the parties jointly submitted a proposed Scheduling Order to this Court.  Dkt 30.  On May
28, 2021, DynaEnergetics moved for a preliminary injunction ("PI Motion").  Dkts. 33-1, 44.  On
June 11, 2021, the Court held a Rule 16 conference, and the Court entered a scheduling order in
this matter on July 6, 2021.  Dkts. 32, 48.

Pursuant to this schedule, the parties exchanged initial disclosures on May 13, 2021, and
submitted to the Court an agreed Protective Order on May 21, 2021.  Dkt. 31-2.  On June 18, 2021,
DynaEnergetics provided its Preliminary Infringement Contentions to SWM.  On July 6, 2021, the
Court issued a detailed Scheduling Order stating, *inter alia*, that trial would commence April 24,
2023.  Dkt. 48 at 1.  The parties exchanged claim construction terms and constructions on August
24, 2021 and September 14, 2021, respectively.

4

With respect to the PI motion, the Court set a hearing for October 6, 2021 and ordered the parties to engage in expedited discovery. Dkts. 33-1, 44, 45. SWM refused to provide discovery on the accused PerfAlign and PerfStorm products, forcing DynaEnergetics to file a motion to compel. Dkt. 49. On August 17, 2021, SWM opposed DynaEnergetics' PI Motion. Dkt. 55-1. DynaEnergetics filed its reply in support of it PI Motion on September 17, 2021. Dkt. 65-1. Three motions are thus fully briefed and pending before the Court: SWM's motion to dismiss, DynaEnergetics' PI Motion, and DynaEnergetics' motion to compel.

### C.   SWM's Colorado Action and Motion to Stay

While begrudgingly participating in this case while continuously obstructing discovery, SWM was also surreptitiously working to derail it. Despite JDP already assigning any interest in the '697 Patent to DynaEnergetics in April 2020, SWM convinced JDP to assign its non-existent remaining rights in the '697 Patent to SWM on August 10, 2021, in part by agreeing to pay Mr. Parks $350,000. Dkt. 62 at DA0012 ¶ 40. SWM's CEO even admitted under oath that SWM paid Mr. Parks "$350,000 to say that his and JDP's assignment to DynaEnergetics of the '697 Patent was fraudulent." SA1010 at 20:6-10. SWM also agreed to indemnify JDP for any costs, including legal fees, stemming from this alleged "assignment," including "any and all claims by a third party" relating to prior assignments of the '697 Patent. Dkt. 62 at DA0040.

Armed with this newly minted "assignment," on August 26, 2021 SWM filed a new lawsuit in the District of Colorado against DynaEnergetics seeking a declaratory judgment that JDP somehow did not assign any interest in the '697 Patent to DynaEnergetics in April 2020 and for unjust enrichment. Dkt. 62 at DA0004-17. SWM does not dispute that JDP signed the 2020 Assignment and acknowledges it includes a conveyance of any remaining rights held by JDP in the'697 Patent to DynaEnergetics. Dkt. 62 at DA0004-05 ¶ 2. Instead, it claims that JDP is "entitled to terminate or void" these previous assignments for lack of consideration. *Id.* at DA0014

¶ 46.  Despite SWM's acknowledgement that the 2020 Assignment was supported by at least one dollar in consideration, it asserts this payment is somehow legally "insufficien[t]." *Id*. at DA0013 ¶ 45.  SWM claims the assignments to DynaEnergetics are "null and void" because they "were executed under circumstances of fraud, duress, or undue influence," but provides scant detail about this alleged "fraud, duress, or undue influence." *Id*. at DA0014 ¶ 47.

Less than a week after launching the Colorado Action, SWM moved to stay this case, contending that its ownership claim in SWM's newly minted Colorado Action provides a full defense to this case because, "if SWM is determined to be the co-owner of the asserted patent, it cannot be sued for infringement of its own patent and the present case must be dismissed."  Dkt. 61 at 2 (citing 35 U.S.C. § 262).  SWM's demand that this Case be stayed simply because SWM has filed the Colorado Action is completely devoid of merit.

## III.    ARGUMENT

This Court enjoys inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," and consequently may stay proceedings in appropriate circumstances. *Landis v. N. Am. Co*., 299 U.S. 248, 245-55 (1936). A party seeking to stay a lawsuit faces a high burden and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.*  Indeed, courts routinely deny motions to stay. *See, e.g.*, *Fairfield Indus. Inc. v. Seabed Geosolutions (US) Inc*., No. CV H-17-1458, 2018 WL 6594013, at *1 (S.D. Tex. July 3, 2018); *Nokia Corp. v. Apple Inc*., No. C.A. 09-791-GMS, 2011 WL 2160904, at *1 (D. Del. June 1, 2011); *Xerox Corp. v. 3Com Corp*., 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999). In considering motions to stay, courts consider three factors:

> (i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and

trial of the case; and (iii) whether discovery is complete and whether a trial date has been set.

*Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (quoting *Nokia Corp.*, 2011 WL 2160904, at *1).   Courts may also weigh additional considerations "beyond those captured by the three-factor stay test," including "[t]he burden litigation places on the court and the parties."   *Murata Mach. USA*, 830 F.3d at 1362.

The Court should not reward SWM's scheming by staying this case as a result of the frivolous lawsuit filed in Colorado, particularly where all the factors clearly militate against a stay.

### A.      DynaEnergetics Would Suffer Both Prejudice and Improper Tactical Disadvantage from a Stay.

Since the Colorado Action is just weeks old, a stay could last *for years*, particularly if SWM seeks to extend the stay through appeal.   SWM's requested stay would, therefore, prejudice DynaEnergetics by indefinitely delaying resolution of DynaEnergetics' infringement claims, potentially for the lengthy duration of that proceeding.   *See Xerox Corp.*, 69 F. Supp. 2d at 407 (denying a stay in part because "a lengthy delay would prejudice" a patent owner).   Patents provide valuable legal rights, and DynaEnergetics has the right to have its infringement claims promptly adjudicated.   *See Performance Aftermarket Parts Grp., Ltd. v. TI Grp. Auto. Sys., Inc.*, No. CIV.A. H-05-4251, 2006 WL 2850061, at *1 (S.D. Tex. Oct. 3, 2006) (finding that a stay "would seriously prejudice Plaintiffs' right to have a prompt resolution of the claims they filed against Defendant").[6]

---

[6] SWM misreads and misapplies *Nussbaum v. Diversified Consultants, Inc.*, No. CIV. 15-600, 2015 WL 5707147 (D.N.J. Sept. 28, 2015) to claim that "mere delay" cannot justify the denial of a stay. Dkt. 61 at 4.  That case did not involve patents or claims of irreparable harm.  Instead, the court simply found no prejudice because "Plaintiff has pleaded no undue prejudice except for suffering delayed judicial resolution."  *Nussbaum*, 2015 WL 5707147, at *2. Here, DynaEnergetics pleaded irreparable harm and thus would suffer from delayed adjudication, even moving this Court for a preliminary injunction (Dkt. 33-1 at 14-25; Dkt. 65-1 at 7-10), currently set for a hearing on October 6, 2021.  Dkt. 45.  Courts, including those cited in *Nussbaum*, have held that delay causes prejudice when a party seeks injunctive relief, as DynaEnergetics has done here. *See Akishev v. Kapustin*, 23 F. Supp. 3d 440, 447 (D.N.J. 2014); *see also Wireless Protocol Innovations, Inc. v. TCT Mobile (US) Inc.*, No. 6:15-CV-918-JRG-KNM, 2017 WL 11630762, at *1 (E.D. Tex. Feb. 9, 2017).

While DynaEnergetics is confident that it will prevail regarding the meritless ownership issues fabricated by SWM, it simply cannot afford to wait to address the infringement claims in this case.  As set forth in DynaEnergetics' PI Motion, SWM's infringement continues to cause DynaEnergetics to suffer irreparable harm, and any delay in adjudication of this dispute would prolong the infliction of that harm.  Dkt. 1 ¶ 30; Dkt. 33-1 at 14-25; Dkt. 65-1 at 7-10.  SWM nevertheless contends that even irreparable harm is "insufficient prejudice to deny a stay" because "the crux of Dyna's complaint is monetary damages, and Dyna's request for nonmonetary relief is designed to prevent future financial harm."  Dkt. 61 at 5.  SWM grossly misunderstands the nature of irreparable harm.  As explained in detail in DynaEnergetics' briefing on its PI Motion, the type of harm suffered by DynaEnergetics as a result of SWM's ongoing direct competition with DynaEnergetics is not compensable by monetary damages.  Dkt. 33-1 at 14-25; Dkt. 65-1 at 7-10.  As the Federal Circuit has made clear, harms related to future financial harm can produce irreparable harm, such as "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities."  *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

At bottom, SWM's entire purpose in filing this motion is to put DynaEnergetics at a tactical disadvantage.  SWM asserts the declaration sought in the Colorado Action is "case-dispositive," because "if SWM is determined to be the co-owner of the asserted patent, it cannot be sued for infringement of its own patent and the present case must be dismissed."  Dkt. 61 at 2 (citing 35 U.S.C. § 262).  However, this very assertion demonstrates SWM's separately filed claims regarding patent ownership could—and should—have been brought as an affirmative defense *in this Case*.[7]  Dkt. 62 at DA0004 ¶ 1.  By seeking a stay, SWM thus hopes to focus all of its litigation

---

[7] Tellingly, SWM seeks "declaratory relief" in the Colorado Action rather than an affirmative claim for relief. SWM

resources on its defense, while simultaneously preventing DynaEnergetics from developing its infringement case in this Court.  Such one-sided litigation flies in the face of the basic notions of due process.  *See Mayberry v. Pennsylvania*, 400 U.S. 455, 469 (1971) (Harlan, J., concurring) ("[T]he appearance of evenhanded justice ... is at the core of due process.").

A stay in this Case would also tactically disadvantage DynaEnergetics in its defense to the ownership claims presented in the Colorado Action by undermining any potential efforts to dismiss or transfer that action to this Court under the first-to-file rule, under which litigation of a dispute generally should proceed in the forum where the dispute is first filed, not in a second-filed lawsuit in a separate forum.  *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005); *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) ("The [first-to-file] rule rests on principles of comity and sound judicial administration and the concern underlying the rule manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.") (internal quotations and citations omitted).  SWM does not challenge the appropriateness or convenience of litigating in this Court, has not challenged venue, and has not filed a motion to transfer under 28 U.S.C. § 1404.  Yet SWM chose to carve its defense out of this action and to launch a second, duplicative lawsuit in Colorado.  The only way it can avoid consolidation with the substantially related issues presented in this action is to obtain the requested stay, furthering DynaEnergetics' prejudice.

Yet SWM contends that this Court should ignore the abundance of actual prejudice to DynaEnergetics simply because SWM has *alleged* some imagined wrongdoing.  But to obtain a

---

has not claimed that its "unjust enrichment" claim in the Colorado Action provides a defense to DynaEnergetics' charges of infringement in this Case.  Nor has SWM asserted that its claims in the Colorado Action could not have been litigated before this Court, instead simply stating that "SWM chose the jurisdiction that it felt was most appropriate for resolving this dispute."  A019-020.

stay, SWM must demonstrate a "clear case of hardship or inequity," not mere speculation. *Landis*, 299 U.S. at 255. SWM further misstates the law in asserting that "any prejudice this stay may impose must be attributed solely to [DynaEnergetics'] own actions." Dkt. 61 at 5 (citing *RMail Ltd. v. Amazon.com, Inc*., No. 2:10-CV-258, 2014 WL 11394910, at \*6 (E.D. Tex. Jan. 30, 2014)). Certainly, SWM created the tactical disadvantage of litigating in a duplicative lawsuit by launching an unnecessary second lawsuit rather than asserting its ownership defense in this Case.

Rather than actually deny the prejudice it clearly will—and intends to—cause, SWM seeks to ignore this prejudice by repeating its accusations of wrongdoing by DynaEnergetics. However, the law simply does not support SWM's position. For example, SWM relies on *RMail* (Dkt. 61 at 4), where the claims of wrongdoing related to patent ownership were *substantiated* by key aspects of a fraud that had *already been proven* in an earlier state court action where two corporate representatives in the chain of title had already been found guilty of fraud. *RMail Ltd.*, 2014 WL 11394910, at \*2.[8] In view of this outcome, a second state court action was pending to determine whether certain asset transfers, including those related to patents, were fraudulent and the accused infringers moved to stay the patent dispute pending final determination of that already pending fraud action. *Id*. Under those specific facts, the *RMail* court rejected the claims that a stay would cause prejudice specifically because (1) the existing judgment of fraud regarding the corporate representatives "adds weight to the [pending patent] ownership concerns," (2) the patent owners knew of the parallel state proceedings affecting ownership but failed to disclose them to the court which "seriously erode[d] their credibility before this Court," and (3) the patent infringement suit was filed *after* the issues regarding ownership arose. *Id*. at \*6. The court concluded that under

---

[8] Of course, the converse is true here as SWM's CEO, Dawna Mauldin, was convicted of a felony count of trade secret theft in 2006 for stealing perforating gun designs from her employer. SA1026-27 at 84:20-87:8.

those extraordinary circumstances any prejudice from the stay "must be attributed solely to the [patent owners'] own actions." *Id.*

The facts of the instant case bear no resemblance to *RMail*. SWM's claims of "fraud" and "coercion" are unsupported by any existing adjudications, nor was there any parallel litigation regarding the ownership of the '697 Patent at the time that DynaEnergetics filed suit against SWM; DynaEnergetics certainly did not file its infringement claim *after* SWM raised its ownership challenge. To the contrary, SWM manufactured this new "ownership" defense long after this Case commenced—and long after it faced the very real possibility of a preliminary injunction—by paying Mr. Parks $350,000 to sign a new "assignment" regarding the '697 Patent and "to say that his and JDP's assignment to DynaEnergetics of the '697 Patent was fraudulent." SA1010 at 20:6-10. The prejudice and tactical disadvantage to DynaEnergetics from a stay under *these circumstances* would be "attributed solely" to SWM and its sharp litigation tactics.

### B.    A Stay Will Not Simplify Issues in This Case.

SWM's argument advocating for one-sided pro-defendant simplification is wrong. The ownership allegations in the Colorado Action are nothing more than a (misguided) affirmative defense to DynaEnergetics' infringement claims and yet SWM argues this action should be abandoned because "if SWM is successful in its case pending in Colorado, all claims in the present case would necessarily need to be dismissed." Dkt. 61 at 6. This rejects the basic structure of adversarial disputes in federal courts. Affirmative defenses by definition *always* have the potential to defeat plaintiffs' claims. *See Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1182 (8th Cir. 2020) (stating that an "affirmative defense" is "[a] defendant's assertion of facts and arguments that, if true, will *defeat* the plaintiff's … claim even if all the allegations in the complaint are true") (internal quotations and citations omitted, emphasis in original). Under SWM's view, a court should stay any claim for relief *anytime* a defendant offers an affirmative defense, whether

11

presented in the same case or improperly carved out into a separate, second-filed case like the Colorado Action.  Courts plainly do not automatically stay clams just because an affirmative defense is offered.  *See, e.g.*, *EON Corp. v. Sensus USA Inc*., No. 6:09-CV-116, 2009 WL 10685336, at *1 (E.D. Tex. Dec. 18, 2009) (denying a defendant's request to bifurcate a case to first address an affirmative defense).

### 1.  SWM's Claims of Simplification Are Mere Speculation

Even if a related litigation could potentially simplify a case, a stay is inappropriate where—as here—such a benefit is "speculative."  *Fairfield Indus. Inc.*, 2018 WL 6594013, at *1.  When the party seeking the stay fails to substantiate the ownership challenge, courts routinely deny motions to stay premised thereon.  For instance, in *Jefferson St. Holdings Intell. Prop. LLC v. Tech 21 UK Ltd*., No. 5:18-CV-806-DAE, 2019 WL 5795667 (W.D. Tex. June 10, 2019), the court stated:

> The Court will not presume that what appears on its face to be a properly executed assignment [of patent rights] is otherwise simply because a party alleges it might be. The presumption as to executed assignments is that they are proper unless a challenger comes forward with affirmative evidence to the contrary. "Could have been" is not affirmative evidence.

*Id.* at *4 (internal quotations and citations omitted). SWM offers only "could have been" support for its ownership challenge to the assignment of the '697 Patent from JDP to DynaEnergetics. Being just weeks old, SWM's claims in the Colorado Action have not been tested by the adversarial process in any way, nor does SWM make any attempt to substantively support the allegations in the Motion.  While SWM ostensibly relies on contract doctrines regarding "consideration," "fraud," and "duress," it's Motion cites no cases whatsoever regarding contract law.  Having failed to offer any support for its alleged defense, SWM simply asks this Court to take its word that it will succeed in the Colorado Action.  This is improper.

12

SWM's ownership claims are not just speculative but are also frivolous. Its basic premise—that "if SWM is determined to be the co-owner of the asserted patent, it cannot be sued for infringement of its own patent and the present case must be dismissed" (Dkt. 61 at 2 (citing 35 U.S.C. § 262))—is flat wrong. SWM argues (Dkt. 61 at 6) that without the 2020 Assignment, DynaEnergetics would have received a license to any portion of the '697 Patent owned by JDP under Section 5 of the 2012 Agreement. Dkt. 62 at DA0008 ¶ 22. But the only licenses described in Section 5 are *exclusive* licenses granted to DynaEnergetics. Dkt. 62 at DA0031. As a result, even if SWM's allegations regarding JDP's retained partial ownership were true—and they are not—DynaEnergetics would still have partial ownership in addition to the exclusive right to practice the '697 Patent, and thus the right to exclude SWM from using that technology. *Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 6:19-CV-00034-ADA, 2019 WL 8501017, at *3 (W.D. Tex. Sept. 11, 2019) (When a patent is subject to an exclusive license, "[a]nyone else (including the patentee-licensor) is excluded from the right to use the patent."). At best (for SWM), it has "an undivided joint interest" (Dkt. 61 at 6) in the '697 Patent with no right to practice it. As the Courts have long recognized an exclusive licensee can sue a patent owner for infringement, so SWM's alleged defense is no defense at all. *See Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891); *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).

### 2. SWM's Colorado Action Claims Fail on their Face

Moreover, while this Court need not resolve the merits of SWM's ownership challenge to deny the motion to stay, even a cursory review reveals that SWM's allegations are baseless. SWM incorrectly contends DynaEnergetics "failed to provide legally adequate consideration" because DynaEnergetics claimed that the invention protected by the '697 Patent is "of great value" and yet only paid JDP "two dollars … for the execution of the purported assignments." Dkt. 62 at DA0013 ¶ 45. SWM's argument is both legally unsupportable and factually inconsistent. Even first year

13

law students know the doctrine of consideration does not require "equivalence in the values exchanged."  Restatement (Second) of Contracts § 79 (1981); *see also Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011) ("This court has long held that any benefit to a promisor or any detriment to a promisee at the time of the contract—no matter how slight—constitutes adequate consideration."); *Leath v. Humble Oil & Ref. Co*., 223 S.W. 1022, 1024 (Tex. Civ. App. 1920) (finding "cash consideration of $1" to be legally sufficient consideration).[9]  SWM defeats its own consideration argument by asserting DynaEnergetics paid "two dollars" for the assignments from JDP in 2020.  SWM's supposition that DynaEnergetics should have paid JDP more due to "great value" of the invention protected by the '697 Patent likewise fails because, as discussed above, even on SWM's revisionist facts DynaEnergetics would have already had a partial ownership interest and an exclusive license to any ownership by JDP in the '697 Patent under Section 5 of the 2012 Agreement.  That license is "irrevocable, exclusive, paid-up … [and] royalty free."  Dkt. 62 at DA0031.  At most, JDP would have a scintilla of ownership interest with no right to practice the '697 Patent or license others to do so.  It further had no ability to receive royalties, and could not revoke that license.  Such limited rights have little, if any, value—except of course in SWM's hands as imagined leverage.

SWM's frivolous claim that DynaEnergetics obtained the assignments from JDP through "fraud, duress, and undue influence" is largely conclusory, and the scant details SWM provides make no sense.  *See* Fed. R. Civ. P. 9(b) (requiring that a claimant plead fraud "with particularity").

---

[9] The 2012 Agreement includes a choice-of-law provision stating that the "Agreement shall be construed as made in accordance with the Laws of Germany."  Dkt. 62 at DA0029.  However, the 2020 Assignment contains no choice-of-law provision.  SWM fails to identify in its complaint in the Colorado Action or in its Motion to Stay the law that allegedly supports its claims regarding the ownership of the '697 Patent.  By failing to identify the governing law, SWM again fails to carry its burden in seeking a stay.  DynaEnergetics does not take a position in this Opposition regarding the choice-of-law issue, in part because the law in the United States uniformly demonstrates that SWM's claims are meritless.  DynaEnergetics nevertheless provides the above citations to highlight the facial deficiencies in SWM's claims.

SWM bases its "fraud" attack on the allegation that DynaEnergetics "represented that JDP and Mr. Parks were obligated under the [2012] Agreement to assign their rights" to the '697 Patent and that these "were false when made" because the 2012 Agreement between JDP and DynaEnergetics "conferred to DynaEnergetics no more than a license." Dkt. 62 at DA0008-10 ¶¶ 22, 29. No complex contract analysis is required to understand this feature of the 2012 Agreement. While SWM claims "[t]he [2012] Agreement, *by its plain terms*, could not have impacted any ownership rights" (Dkt. 62 at DA0008 ¶ 22), SWM also acknowledges Parks signed the 2012 Agreement making him fully aware of the "plain terms" in that contract regarding exclusive licenses (Dkt. 62 at DA0032). Parks could not have been "justified in relying" on the alleged statements by DynaEnergetics. *See* Restatement (Second) of Contracts § 164 (1981); *accord Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 16 (Tex. App. 2016) ("Fraud also requires that the plaintiff show actual and justifiable reliance."); *Colorado Plasterers' Pension Fund v. Plasterers' Unlimited, Inc.*, 655 F. Supp. 1184, 1186 (D. Colo. 1987) (citing the Restatement).[10]

SWM's "duress" and "undue influence" claims are likewise meritless. SWM contends DynaEnergetics somehow took advantage of the COVID-19 pandemic while negotiating with Parks because "Mr. Parks was already uneasy as to how the nascent COVID-19 pandemic would impact JDP's business." Dkt. 62 at SA0010-11 ¶ 33. Yet SWM obtained an assignment of rights to the '697 Patent from Mr. Parks during the same pandemic. SWM fails to explain how DynaEnergetics' negotiations for rights to the '697 Patent during the pandemic involved some "undue influence" but SWM's did not.[11]

---

[10] *See supra* note 9 (addressing choice-of-law issues).

[11] In addition, claims of duress typically must be based on some wrongful acts, not merely on the financial need of a party to a contract. *See, e.g.*, *Chouinard v. Chouinard*, 568 F.2d 430, 434 (5th Cir. 1978); *see also supra* note 9 (addressing choice-of-law issues).

SWM further accuses DynaEnergetics of making "unfounded threats that Mr. Parks would be 'dragged into' pending litigation if he did not execute the assignments." *Id*. at DA0014 ¶ 47. To the contrary, had JDP not made the assignment in March 2020, it likely would have been involved in future litigation because, "an exclusive licensee ordinarily may not sue in its own name alone, but must join the patent owner in an action brought against an accused infringer." *Propat Int'l Corp. v. Rpost, Inc*., 473 F.3d 1187, 1193 (Fed. Cir. 2007). Consequently, assuming *arguendo* that JDP owned an interest in the '697 Patent and DynaEnergetics was the exclusive licensee, then DynaEnergetics likely would, indeed, have been required to include JDP in lawsuits against third parties, such as this one. Parks' purported concern about being dragged into litigation further make no sense given that, in exchange for $350,000 from SWM, Parks (at SWM's behest) has thrown himself squarely into the middle of the dispute between DynaEnergetics and SWM. Since SWM bases its fraud case on (1) the "understanding" JDP had no obligation to assign any interest in the '697 Patent that Parks helped develop and (2) on Parks' assignment of JDP's supposed remaining interest in that patent in exchange for $350,000, DynaEnergetics will have no choice but to depose and cross-examine Mr. Parks at trial in that action. Dkt. 62 at DA0012 ¶ 38.

### 3.   The Law Does Not Countenance Stays Pending Ownership Challenges Under Normal Circumstances.

SWM's claim that whenever an accused infringer simply challenges the ownership of a patent, a stay should automatically issue because a dispute regarding ownership is "the ultimate simplification of the issues in question in the present case" is flat wrong. Dkt. 61 at 6. The cases relied on by SWM for this proposition are plainly inapposite as neither involved a highly speculative ownership dispute. *See RPost Holdings, Inc. v. Exacttarget, Inc*., No. 2:12-CV-512-MHS-RSP, 2014 WL 12703780 (E.D. Tex. Sept. 29, 2014); *Optimal Golf Sols., Inc. v. Altex Corp*., No. 3:09-CV-1403-K, 2009 WL 10733424, at *1 (N.D. Tex. Sept. 30, 2009). As discussed above,

in the *RPost*[12] and *RMail* cases, a state court had already found that two directors for a corporation involved in the transfer of rights to the patent in suit had engaged in fraud. *RPost Holdings, Inc.*, 2014 WL 12703780, at *2. While the state court had not yet ruled whether the transfer of those rights was a fraudulent conveyance, the previous finding of fraud demonstrated that the patent ownership issues were not speculative. Indeed, the court noted that it was this previous fraud judgment that "adds weight to the ownership concerns." *RMail Ltd.*, 2014 WL 11394910, at *6. Similarly, in *Optimal*, the related proceedings were bankruptcy proceedings, not collateral litigation created for the purposes of seeking a stay. *Optimal Golf Sols., Inc.*, 2009 WL 10733424, at *1.[13]

The true motive of SWM's Motion and the Colorado Action is not to simplify this case, but rather to delay it and to multiply the costs for DynaEnergetics. The Court should reject SWM's efforts to pursue such dilatory tactics. *See Xerox Corp.*, 69 F. Supp. 2d at 407 (noting an accused infringer's "dilatory tactical motive" in seeking a stay).

### C.    The Stage of this Case Militates Against a Stay.

The third factor considered by courts in assessing a motion for a stay is "whether discovery is complete and whether a trial date has been set." *Murata Mach. USA*, 830 F.3d at 1361. In assessing this factor, courts consider not just whether discovery had concluded but also the extent to which parties have completed discovery; courts are therefore more likely to deny stays when the parties are "in the midst of fact discovery." *See, e.g.*, *Nokia Corp.*, 2011 WL 2160904, at *1;

---

[12] *RPost* is a parallel case to *RMail*, discussed *supra*.

[13] Both *RMail*/*RPost* and *Optimal* are further distinguishable on the grounds that the stays requested in those cases were far shorter because trial in the related ownership disputes had either already occurred or were mere weeks or months away at the time the motions to stay were granted. *RPost Holdings, Inc.*, 2014 WL 12703780, at *2-*3 (trial regarding ownership less than two months away whereas the patent infringement dispute was "still in its early stages regarding discovery and trial"); *Optimal Golf Sols., Inc.*, 2009 WL 10733424, at *1. Here, the dispute regarding ownership was manufactured by SWM long after DynaEnergetics sued SWM for patent infringement and could take years to resolve.

*Xerox Corp.*, 69 F. Supp. 2d at 407 (denying a stay in part because "[t]he parties have engaged in substantial discovery"). This factor clearly favors denying SWM's request for a stay. Here, "a trial date has been set" for April 24, 2023 and the parties are "in the midst of discovery" having already exchanged initial disclosures, discovery requests, and deposition notices and seven depositions have already been conducted. Dkt. 48 at 1; *see generally* Dkts. 33-2, 33-3, 34-1, 56, 65-2, and 66-1. The parties also exchanged claim construction terms and constructions on August 24, 2021 and September 14, 2021, respectively. *See* Dkt. 48.

While SWM claims this case is at an early stage (Dkt. 61 at 6), SWM fails to acknowledge that the Colorado Action is at a much earlier stage. DynaEnergetics has yet to even respond to SWM's complaint in that case by motion or by answer and is not scheduled to do so until December 7, 2021. No scheduling conference has been held in that case, no discovery whatsoever has taken place, and no trial date has been set. Indeed, no scheduling order has even issued in the Colorado Action. Staying this case because discovery has not yet completed would thus turn the first-to-file rule on its head, favoring a later-filed case over this earlier-filed and more developed Case.

**D.    A Stay Would Not Reduce the Burdens on the Parties or the Court.**

A stay of this action would not reduce the burdens on the parties or the Court. In fact, SWM's argument to the contrary makes no logical sense. SWM asserts that because "the issues in this case *could* be eliminated by the declaratory judgment … a stay … *will undeniably* reduce the burden and expense of litigation on the parties and this Court." Dkt. 61 at 7 (emphasis added). SWM's brazen shift from "could" to "will undeniably" is stunning. Obviously, the sheer possibility that SWM's defense could succeed is a far cry from showing that the defense "will undeniably" succeed. At its core, SWM's argument is simply that a Court must stay a patent case *whenever* the accused infringer dreams up—or pays money to fabricate—an affirmative defense related to ownership of the patent and strategically seeks to adjudicate that defense in a separate

18

proceeding.  Speculative affirmative defenses and multiplicative litigation do not reduce burdens on anybody.

SWM's ownership defense in the Colorado Action is the worst kind of speculative; it is frivolous.  Even under SWM's view of the case, DynaEnergetics would have an exclusive license to the '697 Patent and SWM would, therefore, still infringe the patent.  Thus, staying this Case would delay, but not foreclose, the resolution of DynaEnergetics' infringement claims.  Moreover, SWM's ownership arguments fail on their merits. SWM has not even tried to support those arguments on substantive grounds, as SWM provides no authority to support its contract-doctrine challenges to the 2020 Assignment, citing neither cases, nor statutes, nor treatises.  SWM cannot meet its burden of showing a stay would actually reduce the burdens on the parties or the Court. To the contrary, a stay will increase the burdens on the parties and the courts by requiring DynaEnergetics to litigate to completion a separate meritless suit and then return years later to this Court to renew its patent infringement claims.  Doubling the number of cases plainly does not save costs for the parties, nor does it conserve judicial resources.

## IV.   CONCLUSION

SWM has manufactured a meritless affirmative defense and launched a duplicative lawsuit, all with the hope of undermining this lawsuit and DynaEnergetics' pending PI Motion. Consequently, DynaEnergetics respectfully requests that this Court deny SWM's Motion.

19

Dated: September 22, 2021                    Respectfully submitted,

                                             By:   _/s/ Barry J. Herman_____
                                             William N. Drabble
                                             Texas Bar No. 24074154
                                             London England
                                             Texas Bar No. 24110313
                                             GRAY REED ATTORNEY & COUNSELORS
                                             1601 Elm. St., Suite 4600
                                             Dallas, TX 75201
                                             Telephone: (469) 320-6040
                                             Facsimile: (469) 320-6840
                                             Email: wdrabble@grayreed.com
                                             Email: lengland@grayreed.com

                                             Barry J. Herman (*pro hac vice*)
                                             Maryland Federal Bar No. 26061
                                             Stephanie M. Nguyen (*pro hac vice*)
                                             DC Bar No. 1046300
                                             Julie C. Giardina (*pro hac vice*)
                                             Maryland Federal Bar No. 21085
                                             WOMBLE BOND DICKINSON (US) LLP
                                             100 Light St, 26th Floor
                                             Baltimore, MD 21202
                                             Telephone: (410) 545-5830
                                             Email: Barry.Herman@wbd-us.com
                                             Telephone: (410) 545-5873
                                             Email: Stephanie.Nguyen@wbd-us.com
                                             Telephone: (410) 545-5802
                                             Email: Julie.Giardina@wbd-us.com

                                             Preston H. Heard (*pro hac vice*)
                                             Georgia Bar No. 476319
                                             WOMBLE BOND DICKINSON (US) LLP
                                             271 17th Street, NW, Suite 2400
                                             Atlanta, GA 30363
                                             Telephone: (404) 888-7366
                                             Email: Preston.Heard@wbd-us.com

                                             Lisa J. Moyles (*pro hac vice*)
                                             Connecticut State Bar No. 425652
                                             Jason M. Rockman (*pro hac vice*)
                                             New York Bar No. 4450953
                                             MOYLES IP, LLC
                                             One Enterprise Drive, Suite 428

Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

*Attorneys for Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.*

### CERTIFICATE OF SERVICE

The undersigned hereby confirms that on September 22, 2021, I electronically filed the foregoing with the Clerk of Court using CM/ECF system, which will send notification of such filing to the counsel of record.

*/s/   Barry J. Herman*