IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., § § § *Plaintiffs*, § § v. § § SWM INTERNATIONAL, LLC, § § *Defendant*. § | § § § § § § § § § § § § | Civil Action No. 3:21-cv-00192-M  Jury Trial Requested |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO STAY PENDING ENTRY OF FINAL JUDGMENT**

Defendant SWM International, LLC ("SWM") respectfully files this reply in support of SWM's Motion to Stay this action pending entry of a final judgment in SWM's declaratory judgment action. SWM respectfully requests a virtual hearing to address the issues in this motion.

**I.   INTRODUCTION**

Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc. ("Dyna") conflates this motion to stay with SWM's complaint for declaratory judgment in Colorado (the "Colorado Action"). Dyna essentially demands that SWM prove, without any discovery on the ownership issue, that SWM will be successful in its declaratory judgment action in order for a stay in this matter to be justified. That is simply not the law. It is up to this Court's discretion to grant a stay and Dyna cannot fabricate additional factors and requirements to be considered. It is well established that in considering a motion to stay the Court should determine: (1) whether the stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; (3) whether discovery is complete and whether a trial date has been set; and (4) whether the stay will reduce the burden of

1

litigation on the court and the parties. *Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F. 3d 1357, 1361 (Fed. Cir. 2016).

Dyna's response is intended to misdirect this Court from the issue in *this* motion: whether there is "good cause" to grant a stay. As illustrated in SWM's motion for stay, there is good cause to stay this case pending entry of a final judgment in SWM's declaratory judgment action.

## II. ARGUMENTS

A stay is appropriate to preserve this Court's and the parties' resources while the pending declaratory judgment action is resolved in Colorado. A stay would not unduly prejudice Dyna and it would be burdensome to continue litigating this matter when there is a potentially dispositive action pending elsewhere.

**A.    Dyna fails to articulate how a stay would be unduly prejudicial.**

Dyna argues that it would face a clear tactical disadvantage if a stay were granted, but fails to articulate how it would be prejudiced by a stay other than stating "it simply cannot afford to wait." Dkt. 68 at 8. "Mere delay that inherently results from a stay does not constitute prejudice sufficient to deny a request for stay." *Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Ams., Inc.*, No. H-15-144, 2015 WL 6394436, at *2 (S.D. Tex. Oct. 22, 2015) (citing *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) and *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. CIV.A. 12-054-GMS, 2012 WL 5599338, at *4 (D. Del. Nov. 15, 2012)).

    1.    **Dyna's arguments against a "stay" are inconsistent and undermine Dyna's argument.**

Dyna argues that a stay would be prejudicial because it could be "years" before the Colorado Action is resolved. In the next breath, however, Dyna argues that SWM's allegations in the Colorado Action are "frivolous" and "baseless." These arguments are not only inconsistent,

but actually reinforce the necessity of a stay.

First, it would be particularly burdensome to continue this litigation while the Colorado Action is ongoing if it would actually take years to resolve that case. In fact, it is difficult to imagine anything more burdensome than fully litigating a patent infringement case that might be moot upon the resolution of a potentially dispositive action pending in another forum.[1] *Murata*, 830 F.3d at 1362. The fact that the pending action may take years only further emphasizes the resources and expenses that would burden the parties if a stay is not granted and the assignment to Dyna is found invalid.

Second, if SWM's allegations are indeed as "frivolous" and "baseless" as Dyna claims, then surely Dyna will prevail on a motion to dismiss. If the Colorado Action can be quickly resolved through an early dispositive motion, a stay would last only a matter of months, and any prejudice to Dyna would be minimal.

2. **Dyna will not suffer irreparable harm if a stay is granted.**

Dyna argues that it has established that a stay would be prejudicial because it has and will continue to suffer irreparable harm. However, as SWM has demonstrated in its response to the preliminary injunction motion, Dyna has failed to carry its burden of establishing irreparable harm. Dkt. 57 at 12. Dyna waited months to file its motion for preliminary injunction and the ThunderGun, the only product at issue, was phased out of production last week. Dyna's only remedy is monetary damages. A delay of monetary damages is insufficient to refuse a stay.

---

[1] Fully litigating the case before this Court is particularly burdensome because SWM and Dyna are both parties of the Colorado Action. However, the Colorado Action affects all of the defendants that Dyna has accused of infringement in various jurisdictions across Texas. In fact, Nexus Perforating LLC has also moved for a stay on the basis of the various PGR petitions as well as the Colorado Action. *DynaEnergetics Europe GmbH v. Nexus Perforating LLC*, 4:21-cv-00280, Dkt. 40 at 1 (S.D. Tex. Sept. 28, 2021).

**B.    SWM is not required to prove that it will win on the merits in order for a stay to be appropriate.**

Most of Dyna's opposition to the motion is devoted to indignant arguments about the alleged factual and legal shortcomings of SWM's claims asserted in the Colorado Action. The issue before this Court in *this motion*, however, is whether there is "good cause" to grant a stay. The factors courts consider in determining if there is "good cause" are discussed above. At the risk of stating the obvious, none of those factors require that the party moving for a stay somehow prove in advance that it will ultimately win on the merits of its underlying claims. SWM does not have the burden, for purposes of this motion, of proving that the April 2020 assignment is invalid. If that were the case, there would never be a reason to grant a stay.

SWM's allegations in the Colorado Action sufficiently plead a claim for relief that the April 2020 assignment is voidable due to fraud and lack of consideration. As to whether SWM is successful in the declaratory judgement action, that is something to be determined by the court presiding over those claims after proper discovery and briefing of the issues.

    1.    **Even if SWM did have to prove it would win on the merits, Dyna's assertions are demonstrably incorrect.**

Dyna argues that SWM's ownership claims are frivolous because Dyna necessarily has an exclusive right to practice the invention claimed in the '697 patent. Dkt. 68 at 13. However, that is a clear misstatement of the Engineering Agreement between JDP and Dyna. Section 5.1 and 5.2 of the Engineering Agreement clearly state that DynaEnergetics GmbH shall only have a ***non-exclusive*** license to any invention involving JDP's "Background Intellectual Property Rights." *See* DA0030.

Dyna may wish to believe that the invention claimed in the '697 patent would fall under one of the other portions of section 5 in the Engineering Agreement, sections 5.3 or 5.4 which do mention the possibility of an exclusive license. Whether that is the case, however, is an issue the

parties would need to resolve once the April 2020 assignment is declared invalid. Moreover, even if the invention claimed in the '697 patent falls under sections 5.3 or 5.4 of the Engineering Agreement, rather than 5.1 or 5.2, it is certainly SWM's position that those other provisions were not effective to actually transfer an exclusive license to DynaEnergetics GmbH, yet alone DynaEnergetics U.S., which is not even a party to the Engineering Agreement. Section 5.3 states that JDP "shall grant" an exclusive license for certain inventions, and 5.4 similarly provides that JDP "agrees to grant" an exclusive license under certain other circumstances. Such future-looking language reflects merely a "statement of intended disposition," rather than a "present automatic transfer" of rights. *Omni Medsci, Inc. v. Apple, Inc.*, 7 F.4th 1148, 1152 (Fed. Cir. 2021). Accordingly, whether or to what extent DynaEnergetics GmbH or DynaEnergetics U.S. could **presently** be entitled to the execution of an exclusive license in its favor is another question that would depend on a myriad of underlying factual disputes and legal issues, including relevant statute(s) of limitations and equitable doctrines such as laches and unclean hands.

Finally, if it is declared that SWM and Dyna are co-owners of the '697 Patent, any disputes between them about their respective rights could only be resolved with a full factual record. *See Antenna Sys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1381 (Fed. Cir. 2020). At that point, it will be appropriate to determine: (a) whether the subject matter claimed in the '697 Patent falls within the category of "Background" IP, such that any license would be non-exclusive; (b) whether the language of sections 5.3 or 5.4 in the Engineering Agreement were sufficient to affect a present assignment of rights to Dyna as of April 2012; (c) if so, whether such a promise is still enforceable; and (d) how does this affect DynaEnergetics U.S.'s standing, as it is not a party to the underlying agreement.

It is understandable why Dyna would prefer to bypass all of these issues and pretend that

it is presently the exclusive licensee under the '697 patent simply because it says so. This exercise in wishful thinking, however, ignores not only critically important underlying issues but also the basic nature of the relief requested by SWM and issues presented by the present motion. Requiring the parties to litigate their respective rights in the asserted patent while simultaneously litigating infringement and invalidity issues relating to that same patent would be extremely burdensome and wasteful – regardless of what Dyna might subjectively believe about its likelihood of ultimately prevailing in the ownership dispute.

**C.      Dyna fails to identify a single case in which a stay was denied when an ownership was pending in another forum.**

Dyna tries mightily to distinguish the many cases cited by SWM in its motion, but notably fails to identify *any* case in which a patent infringement claim was allowed to proceed while the ownership of the asserted patent was being challenged in a separate action. In the one case cited by Dyna (Dkt. 68 at 12) where a stay was not granted while an ownership dispute was pending, the court simultaneously considered both the motion to dismiss for lack of subject matter jurisdiction, putting ownership at issue, and the motion to stay. *Jefferson St. Holdings Intell. Prop. LLC v. Tech 21 UK Ltd.*, No. 5:18-CV-806-DAE, 2019 WL 5795667 (W.D. Tex. June 10, 2019). The court did not deny the stay because the party could not support its ownership challenge, as Dyna argues. Rather, the court denied the motion to dismiss on those grounds, which as a result mooted the motion to stay. Again, Dyna has failed to identify a single case in which an infringement case was allowed to proceed while an ownership dispute was pending in another forum. And for good reason – the only alternative to a stay would be both parties and the Court spending years of effort and vast resources – in the case of the litigants, certainly millions of dollars – litigating issues that could be completely irrelevant at the end of the day.

6

### III. CONCLUSION

Because SWM's declaratory judgment action is potentially case-dispositive, there is "good cause" for granting a stay. Granting a stay would not unduly prejudice Dyna, could simplify issues at trial, and would conserve costs for the parties and this Court at this relatively early stage of this case. SWM respectfully requests that this Court grant the stay pending entry of a final judgment in SWM's declaratory judgment action.

Date:  October 6, 2021

Respectfully submitted,

/s/ *Elizabeth M. Chiaviello*
Elizabeth M. Chiaviello
Texas Bar No. 24088913
elizabeth.chiaviello@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, Texas 75201-7347
T. 214.466.4000
F. 214.466.4001

C. Erik Hawes
Texas Bar No. 24042543
erik.hawes@morganlewis.com
Melissa Story
Texas Bar No. 24116816
melissa.story@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
T. 713.890.5000
F. 713.890.5001

Scott S. Sherwin (Admitted pro hac vice)
Illinois Bar No. 6293788
scott.sherwin@morganlewis.com
Nicholas A. Restauri (Admitted pro hac vice)
Illinois Bar No. 6309995
nicholas.restauri@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60601
T. 312.324.1000
F. 312.324.1001

Walter Scott Tester (Admitted pro hac vice)
California Bar No. 287228
scott.tester@morganlewis.com
Jacob Joseph Orion Minne (Admitted pro hac vice)
California Bar No. 294570
jacob.minne@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA 94304-1124
T. 650.843.4000

F. 650.843.4001

*Attorneys for Defendant SWM International, LLC*

# CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 6, 2021, a true and correct copy of the foregoing response was served on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5.1.

*/s/ Elizabeth M. Chiaviello*
Elizabeth M. Chiaviello